*36 OPINION OF THE COURT
Andrew P. Bivona, J.
The above-named petitioner filed a petition with this Court seeking an order of custody of Kiersten H. born February 26, 2000, of whom he was recently adjudicated to be the father. The petitioner was represented by Stuart Greenberg, Esq., the Department of Social Services was represented by Peter Schwarz, Esq., Assistant County Attorney, and the Law Guardian assigned by the Court was Kim Pavlovic, Esq., of the Children’s Rights Society, Inc.
The matter came on for trial over a period of one week, March 7, 2001, March 9, 2001, March 12, 2001 and March 13, 2001. There were five witnesses who were sworn and gave testimony in this matter. Based upon that testimony and the evidence submitted, this Court makes the following factual determinations and decisions on the law:
Background
Robert S., the petitioner in this matter, and Dawn H. were involved in a relationship which produced a child. They were never married nor did they ever live together. In her testimony before the Court Ms. H. stated that when Robert S. was told of the pregnancy, he encouraged her to have an abortion, to give the child up for adoption or to sell the child. Therefore, when Ms. H. was three months pregnant, she severed her relationship with the petitioner. Mr. S. acknowledges that Ms. H. advised him of the pregnancy.
When Ms. H. gave birth to the child on February 26, 2000, she indicated to the social worker at the hospital that she was prepared to give the child up for adoption. The hospital then contacted the Orange County Department of Social Services who assigned caseworker Maijorie Levinson to the mother and child. Mrs. Levinson contacted Ms. H. the day after the child’s birth and ascertained that she did in fact wish to give up the child. Initially the child was placed in foster care pending the mother’s final determination regarding the adoption and a surrender to foster care was signed. Subsequently, the judicial surrender for adoption was signed in open court.
As part of her duties, Mrs. Levinson also gathered what little information Ms. H. had concerning the father of the child. The Department of Social Services thereafter petitioned this Court to approve the mother’s surrender instruments. Notice of both proceedings, as is required by Social Services Law § 384-c (2), *37 resulted in Mr. S. being given notice that the child was being placed and of his opportunity to appear and be heard regarding his position on the surrender for foster care and the subsequent surrender for adoption. Two “Notice to Non-Signatory Parent” dated March 15, 2000 are contained in the Court’s file.
At the hearing Mr. S. testified that he, in fact, received the notice sent by the Department of Social Services and since that notice did not mandate an appearance, he did not appear. As a result of the proceeding to approve a surrender instrument, the Department of Social Services was granted all of Ms. H.’s parental rights and the child was placed in the custody of the Department of Social Services and the Department was granted custody and guardianship of the child.
In a classic situation of the right hand not knowing what the left hand is doing, on May 9, 2000, the Department of Social Services through its Support Collection Unit filed a petition to have Mr. S. adjudicated the father of the child. Mr. S., pursuant to the summons, appeared, denied paternity and requested a blood test. The results of the blood test showed a probability of paternity of 99.94%. Thereafter, on October 19, 2000 the petitioner withdrew his denial and entered an admission to the paternity petition whereupon he was adjudicated to be the father of the child. The Department then realized its error and withdrew its application for support. Mr. S. then filed a petition against the Department of Social Services requesting a permanent order of support be entered. That petition was dismissed by the Hearing Examiner and, in the paternity case, the Department of Social Services waived its right to seek support on behalf of the child. After being adjudicated the father of the subject child, the petitioner, together with his sister Yvonne W., filed a petition dated November 10, 2000 seeking custody. The Department denied the petition and the matter was set down for trial in this Court.
Law
The instant proceeding is unique. Although the Department of Social Services acquired custody and guardianship of the child from the child’s natural mother and the child has been placed in an adoptive foster home since May 1, 2000, no adoption proceeding has been commenced. In Matter of Raquel Marie X. (76 NY2d 387), which is considered the seminal case on the issue of unwed fathers’ rights to their out-of-wedlock child when the child is under the age of six months at the time *38 of placement in an adoptive home, the issue arose in the context of an adoption proceeding. Similarly, in Matter of Robert O. v Russell K. (80 NY2d 254), the proceedings were instituted by the biological father after the adoption had been finalized. Accordingly, the issue to be determined by this Court is whether the fact that an adoption proceeding has not been commenced enhances a biological father’s rights to seek custody when the child has been placed in an adoptive home within the first six months of her life and after court proceedings regarding the surrender for adoption have been completed. The Court finds that the biological father’s position is not enhanced in any manner if he has not demonstrated, pursuant to Domestic Relations Law § 111 (1) (e), that: (1) he held himself out openly to be the father of the child during the child’s first six months, and (2) he contributed towards the birth expenses. Also the Court must determine if the petitioner attempted to “manifest his ability and willingness to assume custody of the child” before the six-month window closed. (Matter of Raquel Marie X., 76 NY2d 387, 402; Matter of Michael, 272 AD2d 618.) If he has not, then Social Services Law § 384-c (7) controls and the Court is prohibited from taking any action which would act to annul, vacate or reverse its orders approving the aforementioned surrender instruments.
Findings of Facts
Based upon all of the testimony and evidence adduced at trial and the Court having the opportunity to examine the credibility of the witnesses, the Court finds as follows:
The petitioner was advised by the biological mother of the pregnancy during the first three months of same. He was also given notice of the adoption surrender by the Orange County Department of Social Services. Although given appropriate notice of the court proceeding to approve the surrender instrument, he did not appear.
Through oversight, Mr. S. was petitioned into court in the paternity proceeding initiated by the Department of Social Services. This time he appeared and after initially denying the petition and obtaining blood tests results, he admitted paternity and was adjudicated to be the father. This Court is convinced that, but for the paternity proceeding, Mr. S. would never have come forward as this child’s father. In any event, his paternity admission was not made until October 19, 2000, after the child had attained the age of six months.
The Court finds that the custody petition which was originally filed by Mr. S. naming himself and his sister as petition *39 ers is very telling of the petitioner’s true intentions. Mrs. W. testified at trial that she is unable to conceive or, bear children and that she would be willing to adopt her brother’s child. Mr. S. denied any conversations with his sister concerning adoption. However, despite the fact that Mrs. W. withdrew her name as a petitioner at the time of the preliminary proceeding, the Court finds Mrs. W.’s testimony credible and discredits the petitioner’s testimony regarding the adoption plan. Accordingly, the Court finds that the petitioning father had no intention of raising the child himself but rather he intended to transfer the child to his sister for adoption.
This is bolstered by the Court’s finding that all of the letters and gifts ostensibly sent by Mr. S. to the child since the commencement of the custody proceeding were, in fact, sent by his sister. Since the preliminary proceeding in this custody matter (after retention of counsel but never prior to the retention of counsel) Mr. S. has been contacting the child through the Department. Although this Court denied his request for temporary visitation, petitioner has sent letters and presents for the child through the Department. Additional letters and gifts have been sent to the child by the petitioner’s mother and sister. However, the Court finds that through the credible testimony of the witnesses, it was the petitioner’s sister who was actually arranging for the communications and gifts.
At the time of the preliminary proceeding in this matter, the petitioner resided in a boarding house. He has another child from a different relationship who visits him there and spends overnights. The Court is convinced that Mr. S. has appropriate parenting skills. Subsequent to the commencement of this action, the petitioner has obtained new accommodations and now resides in a two-bedroom apartment with his mother, Frances R.
To date the petitioner has had no personal contact with the child. He has never seen the child, talked to the child, nor has he ever held or fed the child or changed the child’s diapers. He also has never requested information about the child or inquired about the child’s health or developmental milestones. Most importantly, during the child’s first six months, he did not acknowledge his paternity, contribute to the birth expenses, or demonstrate any willingness to assume custody and raise the child.
Also testifying at this proceeding was the foster father. He asserted his desire to adopt the child should the child be freed for adoption. He also indicated that he and his wife have a small ranch house where the child has her own room.
*40 Decision
The child was born on February 26, 2000 and therefore the six months within which the biological father had to demonstrate his willingness to actively be a father to the child expired on August 26, 2000. This is not a case where the father was (1) physically unable to assume custody, or (2) did not know of the existence of the child, or a case (3) where the biological mother and the adoptive parents perpetrated a fraud upon the father (Lehr v Robertson, 463 US 248). The petitioner was told by the mother within the first three months of the pregnancy of her pregnancy and he received actual notice that the child was being surrendered for adoption.
It has never been contended that the petitioner did not receive proper notice of the proceedings to transfer or commit the subject child’s care, custody and guardianship to the Department of Social Services and to approve the surrender for adoption. At the time that the petitioner was served with notice of the proceeding under section 384-b of the Social Services Law, had he asserted himself as the child’s father, he would have been entitled to a best interests hearing pursuant to section 384-c (3) as to whether or not the surrender instrument should be approved. However, once he did not avail himself of that legal right, he was no longer entitled to such a hearing, as Social Services Law § 384-c (7) provides: “No order of the court in any proceeding pursuant to section three hundred fifty-eight-a, three hundred eighty-four or three hundred eighty-four-b of this chapter or in any subsequent proceeding involving the child’s custody, guardianship or adoption shall be vacated, annulled or reversed upon the application of any person who was properly served with notice in accordance with this section but failed to appear, or who waived notice pursuant to subdivision five. Nor shall any order of the court in any proceeding involving the child’s custody, guardianship or adoption be vacated, annulled or reversed upon the application of any person who was properly served with notice in accordance with this section in any previous proceeding in which the court determined that the transfer or commitment of the child’s care, custody or guardianship to an authorized agency was in the child’s best interests.”
Accordingly, the Court finds that the statutory scheme is such that once notice of the court proceeding for approval of a surrender instrument has been properly served upon the biological father and he has failed to avail himself of his legal rights, and a court has approved the instrument transferring *41 the care, custody or guardianship to an authorized agency and/or a surrender for adoption, thereafter a court cannot make an order in a subsequent proceeding which would vacate, annul or reverse its prior order.
As the petitioner received notice of the proceeding to approve the surrender instrument and did not avail himself of the opportunity to appear and offer evidence, and as the petitioner did not take any actions during the first six months of the child’s life to acknowledge his paternity and assert his desire to be a father to her although he was fully aware of her existence and he was physically able to do so, this Court is prohibited from taking any action which would serve to reverse its prior decision granting care, custody and guardianship to the Department of Social Services.
Therefore, it is the decision of this Court that custody will continue with the Department of Social Services and there will be no visitation by the petitioner, and it is the order of the Court that petitioner’s custody application is dismissed.